IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Sharon L. Bennett, | : | CASES CONSOLIDATED |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Unemployment Compensation | : | Nos. 368 – 370 C.D. 2024 |
| Board of Review, | : | 385 – 387 C.D. 2024 |
| Respondent | : | Submitted: May 6, 2025 |

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                                    FILED: June 2, 2025


Petitioner Sharon L. Bennett (Bennett) petitions for review from six identical consolidated orders issued by the Unemployment Compensation (UC) Board of Review (Board) and dated February 8, 2024.  The Board affirmed six identical consolidated determinations issued by the UC referee and dated February 3, 2023.  The referee concluded that Bennett's May 24, 2022, appeals to the referee from six determinations of the UC Service Center (Service Center) issued in April, June, and July of 2021 were untimely.  Upon review, we affirm.


**I.  Factual & Procedural Background**

On April 18, 2020, Bennett applied for Pandemic Unemployment Assistance (PUA) benefits under Section 2102(h) of the Coronavirus Aid, Relief, and Economic Security Act of 2020 (CARES Act), 15 U.S.C. § 9021(h); she asked

for email notifications.  Certified Record (C.R.) at 48-51.[1]  On May 7, 2020, the Service Center issued a determination that she was eligible for benefits of $572 per week based on her reported 2019 self-employment income of $90,000 and with a claim effective date of March 8, 2020.  *Id*. at 54.  The record also includes another application for PUA benefits filed on March 30, 2021, and asking for email notifications.  *Id*. at 185-88.  On March 31, 2021, the Service Center issued a determination that Bennett was eligible for benefits of $195 per week based on her reported 2020 self-employment income of $0 and with a claim effective date of March 14, 2021.  *Id*. at 191.  At the subsequent hearing on this matter, Bennett acknowledged that she received those benefits.  *Id*. at 100.

On April 23, 2021, the Service Center issued two notices of monetary redetermination for Bennett's two claims.  The first stated that her 2020 benefits should have been $195 per week because her reported 2019 income of $90,000 was unsupported by her tax documentation, which is of record and showed that in 2019, she earned only $5,403.  C.R. at 58; *see also id*. at 43.  The second stated that her 2021 benefits were still $195 per week but her claim effective date was changed to March 28, 2021.  *Id*. at 195.  Those notices both indicated on the second page that she had until May 8, 2021, to appeal to a referee.  *Id*. at 59 & 196.

On June 21, 2021, the Service Center issued two non-fraud PUA overpayment notices of determination.  One stated that Bennett received weekly overpayments of $377 ($572 minus $195) from March 21, 2020, through March 27, 2021, for a total overpayment of $18,850.  C.R. at 229.  The other stated that Bennett received similar overpayments of $377 for three weeks in April 2021, for a total

---

[1] C.R. references are to electronic pagination.

overpayment of $1,131. *Id*. at 141. On the top right corner of both notices was an appeal deadline of July 6, 2021. *Id*. at 141 & 229.

On July 16, 2021, the Service Center issued two more non-fraud PUA notices of determination. The first stated that Bennett received an overpayment of $600 in July 2020. C.R. at 3. The second stated that she received an overpayment of $17, also in July 2020. *Id*. at 267. On the top right corner of both notices was an appeal deadline of August 2, 2021. *Id*. at 3 & 267.

On May 2, 2022, the Service Center issued an overpaid account assessment notice stating that the overpayment Bennett received had converted to a collectible debt of $18,650.02 and that the Department of Labor & Industry asserted the right to file a lien on Bennett's real property on behalf of the state. C.R. at 65. On May 24, 2022, Bennett filed an appeal asserting that she was unaware of any overpayment, that it was not her fault, that she thought she would be granted a waiver, and that it would be a hardship to repay the amount due. *Id*. at 62-71.

On February 3, 2023, the referee conducted a telephonic hearing that Bennett participated in *pro se*. C.R. at 95. The referee explained that the hearing covered all six notifications from April, June, and July of 2021 and that the timeliness of Bennett's appeal was at issue. *Id*. at 98. Bennett stated that she was self-employed in a catering business that she started in 1999 or 2000. *Id*. at 99. When asked if she received the April 2021 redetermination notices at issue, Bennett stated "I think so" but did not remember when she received them. *Id*. When asked if she received the June 2021 and July 2021 overpayment notices, she stated "I think so" and that "I thought it had been adjusted though. I'm not quite sure, to be honest with you." *Id*. She did not remember when she might have received them. *Id*.

Bennett acknowledged her May 24, 2022, appeal and when asked what prompted it, she stated that she "didn't have any idea like that anything from the very beginning was wrong that I was, it sounded like – I guess I'm confused. It sounds like I was being paid the wrong amount the whole time." *Id*. at 99-100. She acknowledged that the May 2022 assessment notice prompted her to appeal. *Id*. at 100. She reiterated that she did not know anything was wrong and did not do anything wrong, that she could not believe she was being asked to pay back the money, and that it would be a hardship for her. *Id*. at 101.

On February 3, 2023, the referee issued identical decisions in each of the six matters. C.R. at 15, 103, 152, 203, 241 & 278. The referee found as fact that Bennett acknowledged receiving the notices although not when she received them, that appeals from the six notices were due in May, July, and August of 2021, that Bennett did not appeal until May 2022 when she received the assessment notice, and that she had not established "administrative error or exigent circumstances" sufficient to excuse her late filing. *Id*. at 17. The referee concluded that she had no jurisdiction to consider the merits of Bennett's appeal and dismissed it. *Id*. On Bennett's further appeal, the Board affirmed, noting Bennett's statement at the hearing that she was "confused" and stating that a claimant's "misunderstanding of appeal instructions is not good cause for a late appeal." *Id*. at 25. Bennett timely appealed to this Court.

## II. Issues

In her petition for review, Bennett asserts that she did not know she was receiving too much in benefits, that she did nothing wrong, and that repayment would be a hardship. Petition for Review at 2. In her brief, she reiterates these

4

positions and acknowledges that she "misunderstood the filing date of the appeal process," but adds that the "real issue" is that any error in the amount of benefits she received was on the part of the Service Center. Bennett's Br. at 7-10. The Board responds that Bennett's admitted confusion about or misunderstanding of the appeal deadlines did not excuse her late filing, which deprived the referee and Board of jurisdiction to consider the merits of her case. Board's Br. at 9-11. The Board adds that if the merits are considered, the record supports the reduction of benefits and subsequent notices of overpayment because Bennett's award was initially based on her reported 2019 income of $90,000, which turned out to be only $5,403 when her 2019 tax documents were submitted and reviewed by the Service Center. *Id*. at 11 n.13.

## III. Discussion

Section 501(e) of the UC Law[2] provides that an appeal from a local UC Service Center's notice of determination must be filed within 21 calendar days after the "Determination Date" provided on the notice.[3] 43 P.S. § 821(e). This rule is jurisdictional and bars consideration of the merits of a late appeal. *Gannett Satellite Info. Network, Inc. v. Unemployment Comp. Bd. of Rev.*, 661 A.2d 502, 504 (Pa. Cmwlth. 1995). In limited circumstances, a late appeal may be excused and the merits of a late appeal may be considered *nunc pro tunc*, or "now for then." To secure this relief, the petitioner bears a heavy burden of demonstrating that the late

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 821(e).

[3] This Court's review is limited to a determination of whether constitutional rights were violated, an error of law was committed, or necessary findings of fact are supported by substantial competent evidence. *Cummins v. Unemployment Comp. Bd. of Rev.*, 207 A.3d 990, 994 n.4 (Pa. Cmwlth. 2019).

5

appeal was caused by "extraordinary circumstances" involving fraud or administrative breakdown in the agency's operation or non-negligent conduct beyond the petitioner's control. *Hessou v. Unemployment Comp. Bd. of Rev.*, 942 A.2d 194, 198 (Pa. Cmwlth. 2008). The petitioner must show that the request for relief is more than an appeal for "grace or mere indulgence" from the administrative tribunal or this Court. *Russo v. Unemployment Comp. Bd. of Rev.*, 13 A.3d 1000, 1003 (Pa. Cmwlth. 2010).

A petitioner's confusion or misunderstanding regarding the appeal deadline or language in a UC determination notice cannot by itself cure a late appeal. *Finney v. Unemployment Comp. Bd. of Rev.*, 472 A.2d 752, 753 & n.2 (Pa. Cmwlth. 1984) (declining to excuse a late appeal based on the claimant's statement that he "didn't realize about the letter in the mail" denying his application for benefits and providing appeal information). In *Anderson v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 932 C.D. 2021, filed August 29, 2022), slip op. at 7-8, 2022 WL 3713047, at \*\*4-5 (unreported), the claimant stated that she did not timely appeal the notices at issue because she did not "understand this stuff"; this Court declined to excuse her late appeal.[4] In *Bergamasco v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1401 C.D. 2019, filed August 24, 2020), slip op. at 5 & 10-11, 2020 WL 4932850, at \*\*2 & 5 (unreported), the claimant stated that he did not timely appeal the notices at issue because he "got confused somehow" and "didn't understand exactly what was needed in what time"; this Court declined to excuse his late appeal.

---

[4] Under Section 414(a) of this Court's Internal Operating Procedures, an unpublished memorandum opinion of this Court issued after January 15, 2008, although not binding precedent, may be cited for its persuasive value. 210 Pa. Code § 69.414(a).

Here, the notices included instructions to appeal the Service Center's determinations and the deadlines were listed on either the first or second page. C.R. at 3, 58-59, 195-96, 141, 229 & 267. Bennett told the referee that she believed she had received the notices. *Id*. at 99. She acknowledged that she did not appeal them until May 2022 after she received the assessment notice advising her that her property might be subject to a lien for the outstanding amounts due back to the state. *Id*. at 100. She maintained that she did nothing wrong and did not know anything was wrong with her benefits, but she did not present further evidence or explanation as to why she did not follow up or appeal when she received the notices in 2021. *Id*. at 101.

There is no dispute that Bennett failed to timely appeal the notices at issue, and she acknowledges that she "misunderstood the filing date of the appeal process." Bennett's Br. at 7-10. She has not alleged fraud on the part of the Service Center, and her allegations of error or breakdown on the Service Center's part pertain to the calculations of her benefits and not to the information it provided her on the notices of the appeal deadlines or requirements. *Id*. She has not established or even asserted that her failure to timely appeal the notices was due to non-negligent conduct on her part or on the part of any other person or entity. Accordingly, there is no basis for this Court to grant *nunc pro tunc* relief and restore her appeal rights. We conclude, therefore, that the referee did not err in dismissing her untimely appeal and the Board did not err in affirming that determination. Because the UC Law's appeal rules are jurisdictional in nature, we may not consider the merits of this appeal.[5]

---

[5] Even if we were to consider the merits, Bennett presented no evidence to the referee that the Service Center's calculations were incorrect and she has not refuted the Board's explanation

7

## IV. Conclusion

In light of the foregoing, the Board's February 8, 2024, orders dismissing Bennett's appeals as untimely are affirmed and we do not reach the merits of her claims.

_____
CHRISTINE FIZZANO CANNON, Judge

---

in support of those calculations, which were based on the discrepancy between Bennett's self-reported 2019 income of $90,000 and her 2019 tax return showing only $5,403. *See* Board's Br. at 11 n.13; *see also* C.R. at 43 & 58.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sharon L. Bennett,
                                    :    CASES CONSOLIDATED
                    Petitioner      :
                                    :
        v.                          :
                                    :
Unemployment Compensation           :    Nos. 368 – 370 C.D. 2024
Board of Review,                    :           385 – 387 C.D. 2024
                    Respondent      :

**O R D E R**

AND NOW, this 2nd day of June, 2025, the February 8, 2024, orders of the Unemployment Compensation (UC) Board of Review, which affirmed the referee's February 3, 2023, determinations that Sharon L. Bennett untimely appealed the UC Service Center's April, June, and July 2021 redetermination and overpayment notices, are AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge